[Crim. No. 348.  First Appellate District.—December 29, 1911.]

# THE PEOPLE, Respondent, v. EDWARD GILMORE, Appellant.

CRIMINAL LAW—QUALIFICATIONS OF JURORS—FINAL DISCHARGE WITHIN YEAR—CONSTRUCTION OF CODES—DISCHARGE IN CASE INEFFECTIVE.—Assuming, without deciding, that subdivision 3 of section 199, and subdivision 13 of section 200, of the Code of Civil Procedure, must be read in connection with section 1072 of the Penal Code, and that when so read proof of the final discharge of a juror from service in criminal cases within one year would disqualify him from further service therein, during such year, yet the mere discharge of a jury from service in a particular case does not have the effect to relieve the individual jurors from future jury duty.

ID.—SHOWING OF QUALIFICATION—PRESUMPTION.—Where it affirmatively appears that a particular juror had never been finally discharged from jury service in criminal cases by order of the court, but, on the contrary, was retained in service by its order, or where, in the absence of such showing, there is no proof of the final discharge of jurors from service in criminal cases within a year, it must be presumed that jurors impaneled were regularly upon the panel, and neither exempted nor disqualified from acting as jurors; and challenges interposed to such jurors for disqualification were properly disallowed.

ID.—MANSLAUGHTER—EVIDENCE—RES GESTAE—DECLARATION OF DECEASED IN DEFENDANT'S PRESENCE—ABILITY TO HEAR.—The court properly allowed a witness who was present during the whole affray between the defendant convicted of manslaughter and the deceased to testify to all that happened between them on the night of the homicide, and as to what was said in the presence of both of them, including a declaration of deceased after he was stabbed, in defendant's hearing, addressed to the witness saying, "Look out, he's got something in his hand." It is held that the testimony of the witness was neither clouded nor conflicting as to what was said and done; but that if it were otherwise, as to defendant being in a position to know and hear all that was said and done, that would go only to the weight of the evidence, and would not affect its admissibility.

ID.—DECLARATION OF DEFENDANT AS TO BEING STABBED—RES GESTAE.—Where a witness testified that he came upon the scene just as the defendant was striking deceased with his fist, that deceased then grappled with the defendant, and during the struggle deceased cried out: "Harry, I am stabbed," that declaration, having been made, as it clearly appears, during the actual combat between the

17 Cal. App.—47

deceased and the defendant, was obviously a part of the *res gestae,* and was rightfully admitted in evidence.

ID.—WITNESS ATTEMPTING RELIEF OF DECEASED—ASSAULT UPON WIT-NESS—RES GESTAE.—Where the witness further testified that, upon his attempting to go to the relief of the deceased, the defendant turned upon the witness and assaulted him, such assault was an in-separable part of the original affray in which the deceased was stabbed to death, and as such it was admissible as being essen-tially *res gestae.*

ID.—CORRECTNESS OF COURT'S INSTRUCTIONS AS TO LAW OF SELF-DEFENSE—PROPER CONSTRUCTION.—It is held that the correctness of the court's charge upon the law of self-defense cannot be tested by singling out and assailing a particular instruction which, when read in connection with the context of the entire charge, correctly and consistently states the law of the case on the subject of self-defense, as defined in the statutes and decisions of this state.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial. R. H. Latimer, Judge.

The facts are stated in the opinion of the court.

Leo J. McEnerney, Thomas S. Lynch, and H. E. Manning, for Appellant.

U. S. Webb, Attorney General, and J. H. Riordan, for Re-spondent.

LENNON, P. J.—The defendant was convicted of the crime of manslaughter, and appeals from the judgment and the order denying his motion for a new trial.

Assuming, without deciding, that subdivision 3 of section 199, and subdivision 13 of section 200, Code of Civil Pro-cedure, must be read in connection with section 1072 of the Penal Code, and that when so read these sections formulate a valid challenge for cause to a juror in a criminal case, still it does not appear from the record before us that there was any foundation in fact for such a challenge to the prospective jurors Love, Thoroe and Holliday. From the testimony of these three talesmen upon their *voir dire* it appears that each had served as jurors in certain cases pending and decided in the same court within a year of the trial of the defendant in the case at bar. It appears further as a matter of course that

upon the termination of each case the jury was discharged, but the order of a trial court discharging a jury upon reaching a verdict in any given case does not mean that the individual jurors are thereby relieved from future jury duty. In the instance of juror Holliday, it affirmatively appears that he had never been finally discharged from jury service by order of the court. On the contrary, he was in attendance upon the court to serve as a juror on the trial of the defendant in obedience to an express order previously made requiring him to report for further jury duty.

In the case of the other two jurors no showing was made to the trial court that they had been finally discharged from jury service in any court of this state within a year prior to the commencement of the trial of the defendant; and in the absence of such a showing it must be presumed that they were regularly upon the panel, and neither exempted nor disqualified from acting as jurors.

For these reasons, if for no other, the challenges interposed to each of the designated jurors were properly disallowed by the trial court.

There was no error in the ruling of the trial court permitting the witness Shea, who was present during the affray from its inception to its termination in the fatal stabbing of the deceased by the defendant, to testify to all that happened, on the night of the homicide, between Del Vane, the deceased, and Gilmore, the defendant. In the course of his testimony this witness told of a declaration of the deceased made immediately after the stabbing and in the presence and hearing of the defendant, wherein the deceased said to the witness, "Gene, look out; he's got something in his hand." The objection made at the trial to this testimony was properly overruled. The witness declared plainly and positively, in answer to repeated questions, that all of the things which he narrated were said and done in the presence and hearing of the defendant. In our judgment the testimony of the witness as to his whereabouts and the position of the defendant during and immediately after the quarrel was neither clouded nor conflicting; but even if it could be fairly argued that the witness was contradictory in his testimony as to the defendant being in a position to know and hear all that was said and done by the deceased after the stabbing, this would

be but an argument against the weight of the evidence, and would not affect its admissibility.

The record does not support counsel for the defendant in the claim that one of the people's witnesses, John P. O'Brien, was permitted, over the objection of the defendant, to testify to a declaration of the deceased which was no part of the *res gestae.* This witness testified that he came upon the scene just as the defendant was in the act of striking the deceased with his fist; that thereupon the deceased grappled with the defendant, and during the struggle which followed the deceased cried out, "Harry, I am stabbed." It is not true, as claimed by counsel for the defendant, that the record shows that this declaration of the deceased was made while the witness O'Brien and the defendant were engaged in a subsequent altercation; and having been made, as the record clearly shows, during the actual combat between the deceased and the defendant, it was obviously a part of the *res gestae* and rightfully admitted in evidence.

The record shows further that when the deceased cried out that he had been stabbed the witness O'Brien went to his assistance, and the defendant then turned upon O'Brien and assaulted him. The other witness, Shea, then interfered upon behalf of O'Brien, and all three men fell to the floor, whereupon the defendant was disarmed by Shea.

It is now insisted upon behalf of the defendant that the assault upon O'Brien was no part of the assault upon Del Vane, and that the trial court erred to the prejudice of the defendant in permitting O'Brien to testify to the details of the assault upon him. The record does not disclose that the defendant made any objection to this particular piece of evidence; but aside from this it is readily apparent, even from a casual reading of the record, that the assault upon O'Brien was an inseparable part of the original affray in which Del Vane was stabbed to death, and as such it was essentially *res gestae* and clearly admissible. (*People* v. *Teixeira,* 123 Cal. 298, [55 Pac. 988].)

The defendant's complaint against the charge of the trial court upon the law of self-defense is hypercritical, but in no event can the correctness of the trial court's charge be tested by singling out and assailing, as the defendant here attempts to do, a particular instruction which, when read in connection

with the context of the entire charge, correctly and consistently states the law of the case. No fault can be fairly found with the charge of the court when read and considered in its entirety, and when so read and considered it clearly, concisely, correctly and without conflict states the law of self-defense as defined in the statutes and decisions of this state.

The judgment and order appealed from are affirmed.

Hall, J., and Kerrigan, J., concurred.