(129 So. 296)

## BRISTOW v. STATE.
### 7 Div. 663.

Court of Appeals of Alabama.
June 24, 1930.

L. H. Ellis, of Columbiana, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

BRICKEN, P. J.

Upon an indictment charging him with the offense of murder in the first degree, this appellant was tried and convicted of manslaughter in the first degree; the jury fixed his punishment at imprisonment for the term of one year and one day, whereupon he was duly sentenced by the court for that term to imprisonment in the penitentiary.

The defendant being charged by indictment for a capital felony, the court, in pursuance to section 8644 of the 1923 Code, made an order commanding the sheriff to summon 80 persons, including those drawn on the regular juries, for the trial of this case. Copy of the indictment and the venire to try the case was "forthwith" served upon the defendant. Before entering upon the trial, the defendant moved the court to quash the venire on the grounds of a mistake in the names of Veniremen Cofer and Brasher. The motion was overruled and defendant excepted. Mere reference to Code 1923, § 8648, is sufficient answer to insistence of appellant in this connection. Said section, among other things, expressly provides any mistake in the name of any juror drawn or summoned is no grounds for quashing the venire or to continue the cause. See, also, Beaird v. State, 215 Ala. 27, 109 So. 161.

Numerous exceptions to the court's rulings were reserved and are here insisted upon as error. Many of these insistences are without merit, but we are convinced, under the rule announced in Madry's Case, 201 Ala. 512, 78 So. 866, 867, we perforce must hold that prejudicial error prevailed in the court's ruling upon the following incident of this trial: The first witness for the state, one J. H. Wood, a brother of the deceased, testified to the effect that at the time the shot was fired by appellant which killed his brother, he (the witness) was about seventy or eighty yards away from the place of killing. He stated: "I heard the report of the pistol;

there was only one shot fired; I was not looking in that direction when the pistol fired. * * * When I heard the shot I was sitting down and I jumped up and looked towards where they were, and saw George Lawley going east from where the shooting took place. * * * I called him when he ran away from where the shooting took place, he was going the other way when I called him, and he then came down to where I was and got down there before I left the place to go to my brother. I stood there and waited until George Lawley came down to where I was, and then he and Fred Lawrence and I went back up there. The defendant made a statement when I walked up to where my brother was shot. I went from where I was after the shot was fired." The record shows: "Thereupon the Solicitor for the State propounded to the witness the following question, Q. 'What did the defendant say when you walked up to where your brother was on the ground.' The defendant objected to said question on the following separate and several grounds: It is illegal; it is immaterial, irrelevant and incompetent, and no part of the res gestæ.' The court overruled said objection and defendant reserved an exception. The witness answered the question as follows: A. He said, Stop, God damn you, don't go to him or I will shoot you. Q. What did he do when he said that (referring to defendant). The defendant objected upon the same grounds above stated, the objection was overruled and exception reserved. The witness answered. A. He had a large pistol in his hand, but I am not sure whether he drawed it on us or no—or whether he made a move with it or not."

The material inquiry is was this part of the res gestæ.

In the Madry Case, supra, the facts are almost identical to those above detailed. The Supreme Court, through Mr. Justice Sayre, said:

"Shortly after defendant had shot deceased, and perhaps while deceased still showed some faint signs of life, the wife of the latter appeared upon the scene. Evidence for the state tended to show that defendant, standing near with his pistol in his hand, told the wife not to go to her husband's body. Evidence for defendant went to show that the knife of deceased lay upon the ground near his body. While defendant was on the stand as a witness his counsel put this question: 'I will ask you whether or not you told her not to go to the body because you wanted the knife identified before the body was moved?' Afterwards, on the state's motion defendant's affirmative answer was excluded. The record, which we have thus in effect reproduced in order to identify and make clear the first exception argued for appellant, shows no er-

ror. What passed between defendant and the wife of deceased was not any part of the res gestæ of the killing—the wife was some distance away when the shooting occurred."

Applying the foregoing, we must hold the insistence of appellant to the effect that the occurrence and statement required of the defendant was not of the res gestæ, and was therefore inadmissible. Not being admissible, it was error to allow it over defendant's objection, and under the rule his case should not have been thus burdened with the hurtful effect of the alleged statement.

Several of the charges refused to appellant appear to state correct propositions of law and have heretofore been approved by the appellate courts of this state. Whether they were fairly and substantially covered by the oral charge or the charges given need not be discussed, as a reversal of the judgment of conviction from which this appeal was taken must be ordered for the reasons stated.

Reversed and remanded.